EDMUND P. MORGAN *et al.*

*v.*

ERASTUS PEET.

1. INSTRUCTIONS—*of their amendment by the court.* If an instruction in its original form, as asked by counsel, is not the law, it is the duty of the court either to refuse it altogether, or so to amend it as to make it law, and then give it as amended. If a court undertakes to amend an instruction, it must take care that the instruction, when amended, declares the law.

2. SAME—*if improperly amended, who may assign error.* So the party asking such erroneous instruction may well complain if it be given with such modification by the court as to prejudice his cause, the modification itself not being the law.

3. SAME—*if erroneous, may be corrected by another.* An erroneous instruction. may be so qualified by another instruction as to cure the error.

4. INDORSER—*his liability upon a subsequent promise to pay.* When an indorser of a promissory note promises to pay the same, after such laches on the part of the holder as would operate to release him from his liability, with knowledge of the facts which would constitute such release, he will be held liable on his new promise, regardless of the question of the solvency or insolvency of the maker.

5. The fact that the indorser believed he was still liable upon his indorsement, at the time of making the new promise, would not affect his liability upon such promise, if it could be shown he had knowledge at the time, of such facts as would operate to discharge him, because he must be presumed to know the law.

6. This knowledge on the part of the indorser may be shown by facts and circumstances.

7. If he did not know the facts at the time of making the new promise, it would not be binding upon him.

8. No new consideration is necessary to support such a promise, when made with a knowledge of the facts.

36

9. EVIDENCE — *a party cannot make testimony for himself.* Where it was proven in a suit by an indorsee against an indorser of a note, that the latter made a new promise to pay the note, the indorser cannot, against the objection of the plaintiff, prove that in a subsequent conversation he explained to the witness that what he had previously said about paying, had reference to another matter.

WRIT OF ERROR to the Circuit Court of Peoria county; the Hon. A. L. MERRIMAN, Judge, presiding.

Burdick and Peet executed and delivered to Erastus Peet the following promissory note:

"$304.40.                    CLEVELAND, O., Aug. 27, 1860.

"Sixty days after date, we promise to pay to the order of "Erastus Peet, at the Bank of Commerce, Cleveland, O., Three "Hundred and Four $\frac{40}{100}$ Dollars, value received."

(Signed)                    "BURDICK & PEET."

The note was assigned by Erastus Peet, the payee, to M. A. Earl, and subsequently, by Earl to the plaintiffs in error, Edmund P. Morgan and Ralph R. Root, who, on the 11th day of July, 1861, the note having then become due and remaining unpaid, commenced an action of assumpsit in the court below, against Erastus Peet, the first indorser, to recover the amount.

Several terms of the Peoria Circuit Court intervened after the maturity of the note, before the institution of the suit.

The declaration contained three special counts: first, upon the note and indorsement; second, alleging in addition, the insolvency of the makers, and that in consequence thereof a suit against them would have been unavailing; and third, that since the execution of the note, the makers had dissolved partnership and transferred their remaining property to the defendant, with the understanding that he should pay the note — that in consideration thereof, and that the plaintiffs would forbear suit until the last of June, 1861, the defendant promised to pay the note by the last of June, with interest at the rate of ten per cent. per annum from the maturity of the note.

To these were added the common counts. The defendant pleaded the general issue, and specially, that when the note became due the makers were solvent, and, with due diligence,

Morgan *et al. v.* Peet.

the money could have been made of them; that the makers had not transferred their property to the defendant, nor was there any understanding that defendant was to pay the note, nor did he promise to do so.

The issues were formed and submitted to a jury.

*William S. Moss, Jr.,* was sworn on behalf of the plaintiffs, and testified as follows: I have seen this note before; I first saw it about the 25th of February, 1861, when it came for collection, in a letter from the plaintiffs, in Ohio, to J. K. Cooper, in whose office I was then reading law as a student. About the first of March following, at the request of Mr. Cooper, I went to see the defendant, with the view of getting the note paid or secured. I met him in the road, and as it was nearly dark, and he could not see well, he requested me to read the note to him, which I did, carefully, naming particularly the amount, names of parties and date, and also the names of the indorsers on the back. The defendant then said he expected to have the note to pay, but had not the money at that time, but if the plaintiffs would wait until June, he would pay it; that he had corn enough to pay it, which he had hauled to Chillicothe, but the price was low and he did not want to sell it then; he thought it would sell better about June, and wished me to write to the plaintiffs, and tell them if they would wait until the 20th of June, he would then pay the note, with ten per cent. interest on it. I told him it was best to give himself time enough, but that I would want the money certainly at the time fixed, and if he would pay ten per cent. interest from the time the note fell due, he might have all of June to pay the note in. This he agreed to, and the time so specified was given by the plaintiffs. At one of the interviews after this, in reply to an inquiry whether the makers of the note had not put property in his hands to pay the firm debts, he spoke of some sewing machines that had been left with him, but did not say they were left for that purpose.

On his cross-examination by the defendant's counsel, the witness said in reference to the first interview: Nothing was said by the defendant at this time, about returning machines.

I read the note to him, and he said he would pay it. I did not tell him he was released as indorser; nothing was said on that subject. I gave him no advice about his legal rights. I did not try to keep this from him, and do not remember to have thought about his being released from liability.

The witness was then asked by the defendant's counsel, what the defendant said at the second interview, about paying for sewing machines left at Chillicothe. To this inquiry, the plaintiffs objected; but the court overruled the objection and allowed the question to be answered, to which the plaintiffs excepted. The witness answered: The defendant, at the second interview, stated that what he said about paying, at the first interview, referred to two sewing machines sent by Earl to Burdick & Peet, after the others, which were shipped to, and were still at Chillicothe, and if Burdick & Peet would receive them, he would pay for them; he said they were worth from $30 to $35 each.

On his re-examination by the plaintiffs, the witness stated that at the first interview nothing was said about machines at Chillicothe.

Other evidence was introduced, but having no bearing upon the questions decided, it is omitted.

After the evidence was closed, the plaintiffs asked the court to give to the jury, among others, the following instruction:

3. A promise by the indorser of a note, after due, to pay it, amounts to waiver of demand and notice, and of proof of insolvency of maker.

The court refused to give this instruction in the form as asked, but gave it after adding this modification:

" Provided such promise was made with a knowledge of the facts on his part, and also, provided the makers of the note were insolvent at the time of the maturity of the note."

The plaintiffs excepted to the refusal of the court to give the instruction as asked, and also to the giving of the same as modified.

The court gave the fourth instruction asked by the plaintiffs, as follows:

" A subsequent promise by an indorser to pay a note, with knowledge of the facts, presumes that the promisor is liable, and that all the conditions required to fix his liability, had been complied with."

The court also gave instructions numbered five and six, on behalf of the defendant, as follows :

5. A promise to pay, after defendant was legally released, without any consideration, if proven, is voidable, and not binding upon defendant, and may be disregarded by jury.

6. Such promise made by defendant, in ignorance that his liability has been released by the laches of the plaintiffs, is not binding on defendant.

To which the plaintiffs excepted. The jury returned a verdict for the defendant; a motion for a new trial was interposed by the plaintiffs which was denied, and a judgment entered against them for the costs.

Thereupon they sued out this writ of error. The questions arising upon the record are, *first,* whether a party who asks an erroneous instruction can complain that the court gave such instruction modified in such manner that it still is not the law ; *second,* whether a promise by an indorser of a promissory note to pay the same, made after such laches on the part of the holder as would operate to discharge the indorser, will be affected by the fact of the solvency or insolvency of the maker ; and herein as to the effect of knowledge of the facts, or the want thereof, on the part of the indorser, upon such promise; and whether a new consideration is necessary to support it ; *third,* whether the defendant could properly prove his explanation at the second interview with the witness Moss, of his promise to pay the note in the previous conversation.

Mr. J. K. COOPER, for the plaintiffs in error, insisted that, as a surety may renew his obligation by a new promise, without any further consideration, on the ground that his right to a discharge is a personal privilege, which he may waive if he choose. 1 Pars. on Notes, 242. So, an indorser of a note, without notice of non-payment by the maker, and with know-

ledge of the facts, promising to pay the note to the holder, the jury may presume such knowledge from circumstances in evidence. *Hopkins* v. *Liswell*, 12 Mass. 52. Even if he thought he was still liable when he made the promise, he is bound by it (*Stevens* v. *Lynch*, 12 East, 38), and such promise is a *waiver* of the want of due notice. *Ladd* v. *Kenney*, 2 N. H. 340.

Messrs. Johnson & Hopkins, for the defendant in error.

First. It is essential to the validity of such a promise, as a waiver of laches and revivor of the original liability of the indorser, that he should make it *with full knowledge of the facts*, of the laches and his discharge thereby. *Tobey* v. *Berly*, 26 Ill. 426, and cases there cited, viz.: *Tibbitts et al.* v. *Dowd*, 23 Wend. 379; *Duryee* v. *Dennison*, 5 Johns. 248; 1 Parsons on Cont. 225, note; 3 N. H. 346.

Secondly. Such promise of an indorser is in the nature of an admission or presumption, that the legal steps necessary to charge the indorser, have in fact been taken, and this is only a *presumption prima facie until the contrary is shown.* *Tobey* v. *Berly*, 26 Ill. 426; *Lundie* v. *Robertson*, 7 East, 231; *Tibbitts et al.* v. *Dowd*, 23 Wend. 379.

But in this case, the evidence conclusively rebuts the *prima facie* presumption, by showing that none of the legal means to charge the indorser were ever attempted.

Mr. Justice Breese delivered the opinion of the Court:

This was an action of assumpsit, brought in the Peoria Circuit Court, by the indorsee against the indorser, of a promissory note. There are three counts in the declaration; the first on the note and indorsement, the second averring, in addition, the insolvency of the makers, and the third avers, that since the note was made, the makers had dissolved partnership, and transferred their remaining property to the defendant, the indorser, with the understanding that he should pay the note. That in consideration thereof, after the note became due, and

that plaintiffs would forbear suit until the last of June, 1861, the defendant promised to pay the note, by the last of June, with interest at the rate of ten per cent. per annum from the time the note fell due.

The common counts were added. The pleas were the general issue, and specially that when the note fell due the makers were solvent, and with due diligence the money could be had of them, and that the makers had not transferred their property to defendant, nor was there any understanding that defendant should pay the note, nor did he promise to pay it or any part of it.

On these issues the cause went to the jury, and a verdict found for the defendant. A motion for a new trial was made and overruled, and judgment against the plaintiffs for the costs.

We shall notice but one or two of the errors assigned, as the case turns on them.

The first is, the qualification given by the court to the plaintiffs' third instruction. This instruction as asked was as. follows: A promise by the indorser of a note after due to pay it, amounts to a waiver of demand and notice and of proof of insolvency of makers. To this the court added: "Provided such promise was made with a knowledge of the facts on his part; and also, provided the makers of the note were insolvent at the time of the maturity of the note."

The defendant in error doubts whether this instruction as asked, is the law, as given after being modified, or refused as asked, and contends, if not law as refused it was properly refused, and if not law as given, the plaintiffs have no right to complain.

We think the qualification of the instruction in the last member of it is erroneous, and must have prejudiced the plaintiffs' cause. Under it, notwithstanding the plaintiffs' showing, that the promise was made with a full knowledge of the facts, the jury could not find·for the plaintiffs unless the makers were insolvent.

Now, if the instruction in its original form was not the law,

it was the duty of the court either to refuse it altogether, or so to amend it as to make it law, and then give it as amended. If a court undertakes to amend an instruction, it must take care that the instruction when amended declares the law. An instruction given by the court, on its own motion, is quite as influential with the jury, or more so, than one given at the instance of either party, and in either case it must declare the law on the point made.

This instruction, in the last member of the qualifying clause, is not the law, as we understand it, for it is wholly immaterial, when claiming a recovery of an indorser, on the fact of his promise to pay with a knowledge of his release as an indorser, whether the makers were or not insolvent. Their solvency, on the contrary, has nothing to do with the liability imposed upon the indorser, under the circumstances of knowledge, if proved.

It is objected by the plaintiffs in error, that the defendant's fifth instruction is erroneous.

That instruction is as follows: A promise to pay after defendant was legally released, without any consideration, if proved, is voidable and not binding upon defendant, and may be disregarded by the jury.

This instruction is broad enough to cover the case of a promise made with full knowledge of the facts, and makes no distinction between such a promise made with and one made without knowledge. If made without knowledge it would be the law, but if with, it is not the law, nor is it necessary there should be a new consideration to support a promise made with knowledge. But, we think, this instruction is so qualified by the sixth, as to cure the defect and error. The sixth is: "Such promise made by defendant in ignorance that his liability has been released by the laches of the plaintiff, is not binding on the defendant."

The rule, we believe to be in such case, that if an indorser makes a new promise when he believed he was liable, it is for the plaintiff to prove that he knew the facts which would discharge him, and this knowledge may be shown by facts and circumstances.

The law presumes that all men know the law, but not the facts, hence a plaintiff, seeking to recover in such case, must show by sufficient proof of facts and circumstances, or otherwise, that the party sought to be charged on his promise knew the fact of his release.

The objectionable part of the third instruction, made so by the court, is not removed by the fourth instruction, for that does not ignore the proof of insolvency. It is as follows:

A subsequent promise by an indorser to pay a note, with knowledge of the facts, presumes that the promiser is liable, and that all the conditions required to fix his liability had been complied with.

The third instruction, as modified, told the jury distinctly that there must be proof of the insolvency of the makers of the note at the time of its maturity. By the terms of the fourth instruction, the jury would not understand this proof was dispensed with, or that the fact of insolvency was to be presumed.

As to the error assigned, admitting improper testimony for the defendant, we have to say that the declarations of the defendant, made on a second interview of his own seeking, about this note, in which sewing machines were spoken of, and in which he attempted to qualify the promise to pay the note made at the first interview, as stated by the witness, and to apply it to two sewing machines sent to Chillicothe, which he was to pay for, and not the note, was not evidence against the objections of the plaintiffs, and should not have been received. It had nothing to do with the issues, and has the appearance, very much, of an attempt by the defendant to make evidence for himself.

For this error in receiving this testimony, and for the error in qualifying the third instruction of plaintiffs, the judgment is reversed, and the cause remanded for a new trial, and for further proceedings not inconsistent with this opinion.

*Judgment reversed.*