East St. Louis Ice & Cold Storage Co. v. Sculley.

---

# East St. Louis Ice and Cold Storage Co. v. Michael Sculley.

63   147
104   4206

1.  NEGLIGENCE—*Selection of Appliances.*—Where there are several methods for the accomplishment of a given work and the merits and demerits of different appliances for such accomplishment may be the subject of controversy among persons supposed to be competent judges, the selection of one method can not be called negligence merely because there is a difference of opinion as to which method is safest and best.

2.  MASTER AND SERVANT—*Hazards of a New Employment.*—Where the dangers of a new employment, to which an employe is temporarily called, are so open and apparent that a person in the exercise of ordinary diligence must apprehend them, such person is in law charged with having accepted the hazards of the situation.

3.  SAME—*Absolute Knowledge Not Necessary.*—Where an employe is temporarily invited to assist in doing a work not in the line of his employment, and accepts the invitation without objection, absolute knowledge of the risks and dangers of such work is unnecessary. If such risks and dangers are so open and manifest that an ordinary man, under the same circumstances, would have ascertained them by the exercise of reasonable diligence, such employe occupies in law the same position as he would if originally employed to do the work.

4.  INSTRUCTIONS—*Errors in, When Not Cured by Others.*—In cases

where the evidence is evenly balanced or the right of recovery doubtful, a vicious instruction on a vital question is not cured by others which state the law correctly.

5.  SAME—*Effect of Modification by the Court.*—The court may either refuse an erroneous instruction or correct it and submit it to the jury as corrected.  But if the court undertakes the modification of an instruction, the instruction as modified is the court's instruction and subject to criticism as such so far as it is affected by the modification.

**Trespass on the Case,** for personal injuries.  Error to City Court of East St. Louis; the Hon. B. H. CANBY, Judge, presiding.  Heard in this court at the August term, 1895.  Reversed and remanded.  Opinion filed March 7, 1896.

CHARLES W. THOMAS, attorney for plaintiff in error.

WISE & McNULTY and L. H. HITE, attorneys for defendant in error.

MR. JUSTICE SCOFIELD DELIVERED THE OPINION OF THE COURT.

Plaintiff in error was engaged in the manufacture and storage of ice.  The ice was conveyed from the factory to the storage houses through a passage-way boarded up at the sides, and about seventy feet long, thirty feet high and five feet wide.  In this passage-way was a platform or ice run thirty inches wide, and at the side, a plank, twelve inches wide, for the workmen to walk upon.  The ice, in large blocks, was taken from the factory and marked into smaller blocks by saws, and then split or divided by the spudder, who stood upon the block, and used for that purpose a pointed instrument called a spud.  The small blocks were then taken by an elevator to the platform, and caused to slide along the same to the place from which they were to be transferred to the storage houses.  Sometimes the blocks became massed together, and it was necessary for some one to separate and shove them forward, which could be done by walking on the plank at the side of the platform.  The platform was in sections, ten feet in length, and was supported by heavy timbers underneath, the ends of which rested in holes or niches in the sides of the passage-way.

These pieces of timber were about four by seven inches, and weighed about fifty pounds each. When the lower part of the storage house was filled, the platform was raised, one section at a time, by blocks and tackle, and the supports were also raised and placed in other niches to hold the platform in the new position. So the work was carried on until the storage houses were filled.

Sculley's injuries were received in raising the platform from the lower level, which was seven or eight feet above the bottom, to the second level, about seven feet above the lower level. Sculley had been working for plaintiff in error for several months, and was engaged in spudding at the time he was hurt. He was called from his customary work to the unusual task of assisting in raising the platform. One section of the platform had been raised to the desired elevation, and one Finmeyer was standing on a cross-piece and plank at the lower level and Sculley was standing on the same cross-piece. Finmeyer was holding the rope of the blocks and tackle, and Sculley was handing a cross-piece to one Hinze, who was on the platform and reaching down that he might receive the cross-piece and put it in place under the platform. Hinze, having taken hold of the end of the cross-piece, called upon Sculley to let go, which he did, and Hinze, not having a sure hold upon the timber, let it fall upon Sculley's head. Sculley was knocked from the cross-piece where he was standing, and fell to the bottom. When the workmen reached him he was unconscious.

The declaration contains three counts. In the first count it is charged that plaintiff in error negligently took defendant in error from his accustomed work, and put him at a task with which he was wholly unacquainted, and that the change was dangerous and the risk great; in the second count it is charged that the plaintiff in error negligently constructed the ice run without a hand rail; in the third count it is charged that the platform was negligently supported by cross-pieces, instead of being held in position by blocks and tackle.

It is difficult to see how a recovery can be sustained un-

der the second or third count.   If there had been a hand-rail
within reach, Sculley could not have held to it while raising
a piece of timber weighing fifty pounds to the platform above
him.   Nor would he have had time to grasp the hand-rail
after delivering the cross-piece to Hinze; nor is there any
reason for believing that he would have attempted to do so.
The evidence, when viewed in the light of general knowl-
edge and experience, also fails to show that the use of blocks
and tackle would be so much safer or better than the use of
cross-pieces as to render the use of the latter a negligent
construction of the passage-way and platform.   There may
be several methods for the accomplishment of a given work,
and the merits and demerits of the various appliances may
be the subject of controversy among those who are sup-
posed to be competent judges.   In such case the selection
of one method can not be called negligence merely because
there is a difference of opinion among experts and also
among non-experts as to what is safest and best.   In this
case the raising of the platform might be more easily accom-
plished by blocks and tackle, but the requisite of stability
might be more readily secured by the use of cross-pieces.
Where there is a puzzling conflict of advantages and disad-
vantages, the employer can not justly be required to exer-
cise an infallible judgment in the choice of methods or
means.

If the judgment in this case can be sustained at all, this
must be done under the first count of the declaration.   A
material and sharply contested question under this count is,
whether or not the dangers of the new employment to
which Sculley was temporarily called were so open and
manifest that one, in the exercise of ordinary diligence,
must have apprehended them.   Absolute knowledge of the
dangers was not necessary before Sculley might be charged
with having accepted the hazards of the situation; for it
must be presumed that he knew what an ordinary man, un-
der the same circumstances, would have ascertained by the
exercise of ordinary or reasonable diligence.

This being the law, the court erred in modifying plaintiff

East St. Louis Ice & Cold Storage Co. v. Sculley.

in error's second and fifth instructions.   The fifth instruction, which will sufficiently illustrate the point, was modified so as to read as follows:

" The court instructs the jury that even although they may believe from the evidence that the plaintiff was not employed to do the work he was engaged in at the time of his injury, yet if the jury further believe from the evidence that he was at said work without objection, and that the risks and dangers thereof (if it had any) were open and plain to his sight, and known to him, then he occupies in this case the same position he would have occupied if he had been originally employed to do this work."

By inserting the words " and known to him " in the above instructions, the court informed the jury that Sculley was not required to exercise any degree of care whatever to ascertain the dangers of his service—that he was not responsible for what he ought to have known, but only for what may have actually come to his knowledge.   Even if charged with inexcusable carelessness and inattention, Sculley could successfully answer, under this proposition of law, " I did not know that there were risks and dangers in this service, and the question as to what I ought to have known is wholly immaterial."

But counsel for defendant in error insists that the instructions should be read together and considered as one charge, and that, when this is done, the error in the second and fifth instructions is rendered harmless.   It is undoubtedly the law that, in most cases, an error in one instruction may be cured by other instructions which state the law correctly, and that, if the whole charge states the law with substantial accuracy, minor imperfections may be disregarded as not having had any probable prejudicial effect.

On the other hand, there are some cases in which the evidence is so evenly balanced, or the right of recovery so doubtful, that one vicious instruction on a vital question can not be cured by many others which state the law correctly; and especially so when the bad instruction is in line with the prejudices of the jury, and may have served to di-

vert their attention from important features of the case. C. & A. R. R. Co. v. Murray, 62 Ill. 326; T. W. & W. Ry. Co. v. Larmon, 67 Id. 68; Wabash R. R. Co. v. Henks, 91 Id. 406; W., St. L. & P. Ry. Co. v. Rector, 104 Id. 296; Sinnett v. Bowman, 151 Id. 146.

But it seems to be insisted that the instructions were bad to begin with, and that for this reason, plaintiff in error can not complain of errors in modifying them.

The point may be disposed of without considering whether or not the instructions were bad in the first instance. The argument is that if one party asks the court to give an instruction which erroneously states the law in his favor, the court may erroneously turn the instruction against the party asking it, in which case one error will neutralize the other, and the two errors will thus produce good law.

The argument is fallacious. The court may either refuse an erroneous instruction, or correct it and submit it to the jury as corrected. But if the court undertakes the modification of an instruction, the instruction as modified is the court's instruction, and subject to criticism as far as it is affected by the modification. O'Neil v. Orr, 4 Scam. 1; Morgan v. Peet, 32 Ill. 281; Orr v. Jason, 1 Bradw. 439; The President, etc., v. Carter, 2 Id. 34; Holly v. Augustine, Id. 108.

Under the circumstances of this case, the error in giving the second and fifth instructions as modified is of such gravity as to require a reversal of the judgment.

The judgment is reversed and the cause remanded.